UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
-----------------------------------------------------------

ROCKWELL CAPITAL PARTNERS and
SAMUEL OSHANA,

                              Plaintiffs,

              -against-

CD INTERNATIONAL ENTERPRISES, INC.
AND HENRY L. KLEIN,

                              Defendants.
-----------------------------------------------------------

1:17-cv-1537

**COMPLAINT**

**JURY TRIAL DEMANDED**

        Plaintiffs, Rockwell Capital Partners ("Rockwell") and Samuel Oshana ("Oshana") (collectively, "Plaintiffs"), by their attorneys, White and Williams, LLP, as and for their complaint against Defendants herein, alleges as follows:

## INTRODUCTION

        1.      In 2016, Henry L. Klein ("Klein"), filed an action in this Court on behalf of CD International Enterprise, Inc. ("CDII") against Rockwell, Oshana and two unrelated defendants captioned *CD International Enterprises, Inc. v. Rockwell Capital Partners, Inc. et. al.*, 16-CV-003945 (CRC) (the "Action"). CDII and Klein knew before filing suit, during the suit and after the suit was dismissed that CDII had no basis upon which to sue Plaintiffs, that its claims were not warranted by applicable law and that its alleged factual contentions were without evidentiary support.    This was clearly established by the fact that after filing its complaint attacking its transaction with Rockwell as fraudulent, CDII entered into virtually identical contracts with other parties, and only filed suit after Rockwell refused the request to lend still more money.

        2.      Nonetheless, Defendants actively prosecuted the action; including filing frivolous motions plainly intended to drive up Plaintiffs' attorneys' fees and costs while their ultimately

successful motion to dismiss was pending. This Court did in fact dismiss the action because "Rockwell's actions were consistent with the parties' negotiated, written agreements, no cause of lies."

3.     Plaintiffs now bring this action for abuse of process based on Defendants' filing a complaint alleging baseless claims, which they knew were baseless given that they have entered into the same or similar agreements with other entities before filing the Action, while the Action was pending and since the Action was dismissed.  The entire Action was fraudulent and solely filed to harass, cajole and compel Plaintiffs to loan additional monies to CDII. This was an improper and abusive use of the legal process.

4.     In addition, Defendants'' frivolous and abusive lawsuit masked CDII's failure to live up to its agreement with Rockwell and intentional interference with Rockwell's relationship with a third party.  Rockwell also seeks to recover for CDII's breach and tortious interference.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction, insofar as this is a civil action for damages and equitable relief, in which the matter in controversy exceeds the sum of $75,000.00, exclusive of interest, costs and attorneys' fees.   There is complete diversity of citizenship between the Plaintiffs and Defendants.  Rockwell is a citizen of the States of Delaware and New York; Oshana is a citizen of the State of New York; CDII is a citizen of the State of Florida and Klein is a citizen of the State of Louisiana.

6.     Venue is appropriate in this Judicial District pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or admissions giving rise to Plaintiffs' claims occurred in this District.

## THE PARTIES

7.      At all relevant times Rockwell was a Delaware corporation with its principal place of business located at 919 N Market Street, Suite 1401, Wilmington DE 19801

8.      Oshana is an individual who is a citizen of Connecticut and currently resides in Greenwich, Connecticut.

9.      On information and belief, Defendant CDII is a Florida corporation with its principal place of business located at 431 Fairway Drive, Suite 200, Deerfield Beach, FL 33441

10.     On information and belief, Defendant Henry L. Klein is an individual living in the Louisiana who practices law in New Orleans, Louisiana.

## BACKGROUND

11.     On information and belief, CDII is a Florida based company that provides mineral-trading and consulting services to companies doing business in China and South America.

12.     On information and belief, CDII's shares are traded on the over-the-counter market.

### CDII Borrows $600,000

13.     On information and belief, on April 7, 2014, CDII borrowed $600,000 from Kong Tung ("Tung"),  a former Director of CDII, at an interest rate of 2% monthly or 24% annually, payable by January 7, 2015 and secured by CDII assets, equity holdings and investments in China (the "Original Note").

14.     On information and belief, CDII was unable to repay the principal and accrued interest on the Original Note when it became due on January 7, 2015.

15.     On information and belief, on January 7, 2015, CDII and Tung enter into an amended note ("Amended Note") with a new maturity date of December 31, 2015.  Also on information and belief, they agreed that after the maturity date, Tung had the option to convert the debt to CDII Common Stock at 85% the market price of CDII stock on the date of conversion with a floor price of $0.001, limited to 9.99% of the outstanding shares at any given conversion time.

16.     On information and belief, the Amended Note was incorporated into the Original Note (collectively, the "Tung Convertible Note").

17.     On information and belief, at all relevant times, Dr. James Wang ("Wang") personally guaranteed CDII's performance on the Original Note and the Amended Note.

18.     On information and belief, in July 2015, Tung experienced cash flow problems and asked CDII to either repay the loan early or find an investor willing to purchase CDII's debt from him.

**Rockwell Agrees to Purchase CDII's Debt from Tung**

19.     CDII sought a potential purchaser of the Tung Convertible Note and was introduced to Rockwell.

20.     Rockwell agreed to purchase the Tung Convertible Note as of September 29, 2015.

21.     On September 29, 2015, Tung assigned the Original Note to Rockwell and Rockwell agreed to pay Tung $107,000 upon closing and to make payments of no more than $100,000 every 45 days until the $814,000 debt was extinguished ("Rockwell Assignment"). CDII executed an acknowledgment to the Rockwell Assignment.

22.     On the same day, CDII executed an Amended and Restated Convertible Promissory Note to Rockwell for $814,000 with interest accruing at 8% per annum ("Rockwell Convertible Note").

23.     CDII voluntarily entered into the transaction with Rockwell and greatly benefitted from it.

24.     CDII benefitted because the Rockwell Convertible Note

        a.      reduced the interest rate on the loan to 7% annually from 24% annually due under the Tung Convertible Note;

        b.      eliminated the December 31, 2015 maturity date specified in the Tung Convertible Debt, thereby freeing CDII of the obligation to repay the principal and accrued interest by that date;

        c.      reduced the scope of assets pledged as security on the debt from all CDII's assets, equity holdings and investments in China under the Tung Convertible Note to the convertible option under the Rockwell Convertible Note.

25.     In exchange for these benefits, CDII agreed to provide Rockwell with an option to convert up to 100% of CDII's debt into equity at a 40% discount of the lowest closing price of CDII's common stock during the ten trading day period preceding the conversion date.

26.     The Rockwell Convertible Note, unlike the Tung Convertible Note, did not contain a temporal restriction on Rockwell's ability to convert debt into common stock.

27.     On information and belief, on or about October 15, 2015, CDII sent a letter to its transfer agent, Colonial Stock Transfer ("Colonial") irrevocably authorizing and instructing Colonial to reserve a sufficient number of shares of CDII common stock for issuance upon full conversion of the Rockwell Convertible Note (the "Instruction Letter").

28.     The Instruction Letter specified that Colonial should initially reserve 220,000,000 shares, then that the reserve might subsequently be increased. The shares were to be in the names of the registered holder of the securities submitted for conversion or exercise.

29.     On information and belief, CDII authorized Colonial to issue shares upon receipt of a conversion notice from Rockwell without any further action or confirmation by CDII.

30.     On information and belief, the Instruction Letter was on CDII letterhead, was signed by its CEO and it had been approved by its Board of Directors.

**Rockwell Exercises Its Rights Under the Rockwell Convertible Note**

31.     In the last quarter of 2015, Rockwell exercised its option to convert CDII debt on several occasions.

32.     On information and belief, prior to Rockwell's conversion, outside counsel Matheau J. Stout, Esq. provided an opinion letter to Colonial analyzing whether the conversion shares of common cold be resold by Rockwell without restriction.

33.     On information and belief, Colonial accepted the legal opinions and effectuated the conversions pursuant to the Instruction Letter.

34.     Rockwell then sold the stocks using Alpine Securities, a registered broker-dealer. Alpine Securities also conducted due diligence on each deposit by Rockwell of CDII securities to ensure that the stock was being sold pursuant to an exemption from the registration requirements of the federal securities laws.

35.     Each of Rockwell's conversions was at a 40% discount of the lowest closing price of CDII's common stock during the ten trading days preceding the conversion date.

36.     On information and belief, Rockwell's conversion caused a drop in the value of CDII's remaining shares.

37.     Prior to bringing the Action, CDII approached Rockwell requesting that it enter into another loan transaction.  The terms proposed by CDII would have constituted a violation of the federal securities laws. Rockwell refused.

38.     On information and belief, subsequently, CDII reserved all remaining shares for a third-party, thereby preventing Rockwell from exercising its remaining conversion rights and interfering with Rockwell's agreement with Tung to purchase the note.

**Before Commencing the Action, CDII Enters into Agreements with the Same Terms it had with Plaintiffs**

39.     On information and belief, on October 15, 2015, CDII issued a convertible promissory note for the amount of $50,000 to an institutional investor at a 10% annual interest rate with an option to convert the note at 55% of the lowest trading price of CDII's common stock during the 10 consecutive trading days prior to the conversion date.  The institutional investor converted the note and accrued interest into CDII's common stock by December 31, 2015.

40.     On information and belief, on October 15, 2015, CDII issued a convertible promissory note for the amount of $25,000 to an institutional investor at a 10% annual interest rate with an option to convert the note at 55% of the lowest trading price of CDII's common stock during the 10 consecutive trading days prior to the conversion date. CDII received $20,000 and $5,000 was retained by the institutional investor for due diligence and legal bills related to the transaction. The institutional investor converted the note and accrued interest into CDII's common stock by September 30, 2016.

41.     On information and belief, on October 20, 2015, CDII issued a convertible promissory note for the amount of $40,000 to an institutional investor at a 10% annual interest

rate with an option to convert the note at that lower of (1) the closing sale price of the common stock on the principal market on the trading day immediately preceding the closing date and (2) 60% of the lowest trading price of CDII's common stock during the 20 consecutive trading days prior to the conversion date.  This note is in default and accruing at an interest of 24%. As of September 30, 2016, the institutional investor converted all of the principal and accrued interest to CDII's common stock.

42.    On information and belief, on October 22, 2015, CDII issued a convertible promissory note for the amount of $25,000 to an institutional investor at an 8% annual interest rate with an option to convert the note after 180 days and cash payment a price equals to 60% of the lowest trading price for the last 20 trading days prior to conversion. CDII received $23,000 in cash and $2,000 was retained by the institutional investor for due diligence and legal fees related to the transaction. As of June 14, 2016, the institutional investor converted all of the principal and accrued interest to CDII's common stock.

43.    On information and belief, on December 9, 2015, January 22, 2015 and February 24, 2016, CDII entered into three separate convertible promissory notes for the amounts of $100,000, $100,000 and $125,000 respectively with one institutional investor with an option to convert the notes at 55% of the lowest trading price of CDII's common stock during the 10 consecutive trading days prior to the conversion date.  The institutional investor converted $324,990 of the note into CDII's common stock from December 10, 2015 through June 30, 2016.

44.    On information and belief, on December 9, 2015, CDII issued a convertible promissory note for the amount of $120,000 to an institutional investor at a 12% annual interest rate with an option to convert the note at 55% of the lowest trading price of CDII's common stock during the 10 consecutive trading days prior to the conversion date.  The original discount

was set equal to 20% of any consideration paid and 15% additional cumulative discount of the conversion price can be charged under certain circumstances. As of September 30, 2016, the institutional investor converted $36,917 of the note to CDII's common stock.

45.     On information and belief, on January 25, 2016, CDII issued a convertible promissory note for the amount of $35,000 to an institutional investor at a 12% annual interest rate with an option to convert the note at 55% of the lowest trading price of CDII's common stock during the 10 consecutive trading days prior to the conversion date. CDII received $27,000 and the remaining $8,000 was retained by the institutional investor for due diligence and legal bills related to the transaction.

46.     On information and belief, on February 24, 2016, CDII issued a convertible promissory note for the amount of $55,000 to an institutional investor at a 10% annual interest rate with an option to convert the note at 55% of the lowest trading price of CDII's common stock during the 10 consecutive trading days prior to the conversion date. CDII received $45,000 and the remaining $10,000 was retained by the institutional investor for due diligence and legal bills related to the transaction.

**Defendants File the Action Against Plaintiffs**

47.     On February 27, 2016, Defendants filed the Complaint against Plaintiffs, Colonial, Alpine and Stout (the "Action"). The Action alleged that (1) the Rockwell Convertible Note was void for lack of consideration, fraud in the inducement and other deficiencies; (2) the Instruction Letter was unenforceable as against public policy; (3) Rockwell violated the terms of the Rockwell Convertible Note by failing to provide notice to CDII prior to exercising its conversion rights; and (4) Rockwell wrongfully converted CDII shares.

48.     On March 7, 2016, Defendants voluntarily dismissed Colonial.

49.     By letter dated March 17, 2016, Plaintiffs' counsel advised CDII and Klein of the many reasons why they should not pursue the Action, including many of the reasons that subsequently resulted in the dismissal of the Action. Defendants acknowledged receipt of the letter but nevertheless chose to continue its aggressive prosecution.

50.     On April 7, 2016, Defendants filed a motion to expedite declaratory judgment pursuant to Federal Rule 57 ("Rule 57 Motion") and filed an errata and supplement to the 57 Motion on April 14, 2016.   Plaintiffs filed an objection to the Rule 57 Motion on April 21, 2016, which Defendants replied to on April 28, 2016. On June 8, 2016, Defendants filed a motion to withdraw the Rule 57 Motion, which was granted on July 1, 2016.

51.     On April 21, 2016, Plaintiffs filed a motion to dismiss (the "Dismissal Motion"). On May 9, 2016, Defendants oppose the Dismissal Motion.  On May 16, 2016, Plaintiffs filed a reply in further support of the Dismissal Motion.  On April 24, 2017, this Court granted the Dismissal Motion on the grounds that (1) the Rockwell Convertible Note had sufficient consideration by reducing the original loan's interest rate; eliminating the maturity date and reducing the scope of assets pledged for security, and thus, there is a valid and enforceable agreement; (2) relying on statements made during negotiation not included in the agreement was not justifiable, and thus, there was no fraudulent inducement; (3) the interest in enforcing the Rockwell Convertible Note is not clearly outweighed by any public policy; (4) no breach of contract claim lies for failure to give notice as there are no alleged damages and by not opposing this part of the Dismissal Motion, CDII conceded the argument; and (5) count four failed to state a claim as "Rockwell's conversions of debt into common stock were consistent with the parties' written agreements."  On May 24, 2017, the Defendants filed a notice of appeal.

52.     On May 23, 2016, Defendants file a motion for partial summary judgment ("Partial Summary Judgment Motion") despite the pending Dismissal Motion.  On May 26, 2016 Plaintiffs filed a motion to strike the Partial Motion (the "Strike Motion").  On June 20, 2016, this Court denied the Partial Summary Judgment Motion without prejudice on the grounds that under the PSLRA, all proceedings must be stayed pending the outcome of all motions to dismiss.

53.     On July 7, 2016, Defendants moved to dismiss count five of the complaint alleging violations of securities law ("Count 5 Motion"). On July 18, 2016, the parties entered into a stipulation agreeing to the dismissal of count five without prejudice. On July 19, 2016, this Court grants the Count 5 Motion.

54.     On August 10, 2016, Defendants moved for leave to file restated opposition to the Motion (the "Restated Motion"). On August 15, 2016, Defendants filed errata papers on the Restated Motion.  On August 24, 2016, Plaintiffs opposed the Restated Motion and Defendants replied on August 29, 2016. On November 1, 2016, Defendants filed a motion requesting an ex-parte hearing on its Restated Motion ("Ex Parte Motion"). Defendants opposed the Ex Parte Motion on November 9, 2016. The Ex Parte Motion was denied on November 14, 2016.

55.     On February 7, 2016, Defendants filed a motion for leave to file very limited Requests for Admissions ("Admissions Motion"). Plaintiffs opposed the motion on February 21, 2016. The Court deemed the Admissions Motion moot after its April 24, 2017 decision granting the Dismissal Motion.

**After the Action, CDII Enters into Agreements with the Same Terms it had with Plaintiffs**

56.     On information and belief, after filing the Action, CDII entered into a convertible note with multiple institutional investors on essentially the same terms or worse terms than it complained of against Rockwell in the Action.

57.     On information and belief, on March 2, 2016, CDII issued a convertible promissory note for the amount of $56,750 to an institutional investor at a 10% annual interest rate and default interest rate of 24% with an option to convert the note at 55% of the lowest trading price of CDII's common stock during the 25 consecutive trading days prior to the conversion date.  CDII received $45,000 and $11,750 as retained by the institutional investor for due diligence and legal fees related to the transaction. As of September 30, 2016, the institutional investor converted $8,193 of the note and $2,017 of interest to CDII's common stock.

58.     On information and belief, on March 28, 2016, CDII issued a convertible promissory note for the amount of $100,000 out of Tung's Convertible Note to an institutional investor at a 12% annual interest rate.  As of June 30, 2016, the institutional investor converted $98,844 of this note into CDII's common stock.

59.     On information and belief, on April 5, 2016, CDII issued a convertible promissory note for the amount of $60,000 to an institutional investor at a 10% annual interest rate with an option to convert the note at 55% of the lowest trading price of CDII's common stock during the 10 consecutive trading days prior to the conversion date.  CDII received $50,000 and $10,000 was retained by the institutional investor for due diligence and legal fees related to the transaction.

60.     On information and belief, on April 15, 2016, CDII issued a convertible promissory note for the amount of $15,000 to an institutional investor at a 12% annual interest rate with an option to convert the note at 55% of the lowest trading price of CDII's common stock during the 15 consecutive trading days prior to the conversion date. CDII received $11,700 and $3,300 was retained by the institutional investor for due diligence and legal fees related to the transaction.

61.     On information and belief, on April 19, 2016, CDII issued a convertible promissory note for the amount of $15,000 to an institutional investor at a 12% annual interest rate with an option to convert the note at 55% of the lowest trading price of CDII's common stock during the 15 consecutive trading days prior to the conversion date. CDII received $11,700 and $3,300 was retained by the institutional investor for due diligence and legal fees related to the transaction.

62.     On information and belief, on April 20, 2016, CDII issued a convertible promissory note for the amount of $24,000 to an institutional investor at an 8% annual interest rate with an option to convert the note at 55% of the lowest trading price of CDII's common stock during the 15 consecutive trading days prior to the conversion date. CDII received $20,000 and $4,000 was retained by the institutional investor for due diligence and legal fees related to the transaction.

63.     On information and belief, on May 18, CDII issued a convertible promissory note for the amount of $24,000 to an institutional investor at a 8% annual interest rate with an option to convert the note at 50% of the lowest trading price of CDII's common stock during the 15 consecutive trading days prior to the conversion date. CDII received $20,000 and $4,000 was retained by the institutional investor for due diligence and legal fees related to the transaction.

64.     On information and belief, on June 28, 2016, CDII issued a convertible promissory note for the amount of $40,000 to an institutional investor with an option to convert the note at 55% of the lowest trading price of CDII's common stock during the 10 consecutive trading days prior to the conversion date. From August 9, 2016 through September 30, 2016, the institutional investor converted $35,100 of the note and $524 in interest to CDII's common stock.

65.     On information and belief, on July 11, 2016, CDII issued a convertible promissory note for the amount of $50,000 out of Tung's Convertible Note to an institutional investor at an 8% annual interest rate with an option to convert the note at 55% of the lowest trading price of CDII's common stock during the 20 consecutive trading days prior to the conversion date. As of September 30, 2016, the institutional investor converted $43,133 of the note to CDII's common stock.

66.     On information and belief, on July 11, 2016, CDII issued a convertible promissory note for the amount of $20,000 to an institutional investor at a 10% annual interest rate and a default interest rate at 22% with an option to convert the note at 55% of the lowest three trading prices of CDII's common stock during the 10 consecutive trading days prior to the conversion date. CDII received $17,000 and $3,000 was retained by the institutional investor for due diligence and legal fees related to the transaction.

67.     On information and belief, on July 11, 2016, CDII issued a convertible promissory note for the amount of $29,700 to an institutional investor at an 8% annual interest rate with an option to convert the note at 55% of the lowest trading price of CDII's common stock during the 15 consecutive trading days prior to the conversion date. CDII received $25,000 and $4,700 was retained by the institutional investor for due diligence and legal fees related to the transaction.

68.     On information and belief, on August 7, 2016, CDII issued a convertible promissory note for the amount of $27,000 to an institutional investor at an 8% annual interest rate with an option to convert the note at 55% of the lowest trading price of CDII's common stock during the 15 consecutive trading days prior to the conversion date. CDII received $25,000

and $2,000 was retained by the institutional investor for due diligence and legal fees related to the transaction.

69.     On information and belief, Defendants brought the Action not because they believed they had a legitimate cause of action but as retaliation against Plaintiffs for Rockwell's refusal to agree to CDII's request to enter into a new loan and to improperly cajole and induce Rockwell into providing another loan.

70.     On information and belief, Defendants did not initiate a lawsuit against any of its other investors who had convertible notes with the same or substantially similar terms to the Rockwell Convertible Note, each of which had agreed to enter into a follow-on transaction with CDII.

**AS AND FOR A FIRST CLAIM**
**(Tortious Interference with Contract and Prospective Economic Advantage**
**by Rockwell against CDII)**

71.     Plaintiffs repeat, reiterate, and realleges each and every allegation set forth above with the same force and effect as if set forth at length herein.

72.     Plaintiffs had a reasonable expectation to convert the debt of CDII into shares of CDII pursuant to the Rockwell Assignment and Rockwell Convertible Note.

73.     On information and belief, CDII reserved all remaining shares for a third party precluding Rockwell from reserving any additional shares.

74.     On information and belief, CDII undermined Rockwell's ability to perform under the Rockwell Assignment.

75.     CDII tortiously and/or intentionally interfered with Rockwell's ability to convert CDII's debt into shares

15

76.     As a result of CDII's actions, Rockwell was unable to realize the benefits of its agreements with Tung.

77.     CDII knew or should have known that its actions would proximately cause Rockwell to be unable to fulfill its contractual obligations to Tung.

78.     CDII exhibited a wanton and willful disregard for the rights of Rockwell.

79.     As a result of the foregoing, Plaintiffs have been damaged and demand judgment in an amount to be determined at trial.

## AS AND FOR A SECOND CLAIM
### (Breach of Contract by Rockwell against CDII)

80.     Plaintiffs repeat, reiterate, and realleges each and every allegation set forth above with the same force and effect as if set forth at length herein.

81.     CDII had a duty under the Rockwell Convertible Note to reserve shares for Rockwell's conversion.

82.     Upon information and belief, CDII took actions to undermine Rockwell's conversion rights.

83.     CDII's actions were in breach of its contractual obligations to Rockwell.

84.     CDII knew that its actions would deprive Rockwell of the benefits of the Rockwell Convertible Note.

85.     As a result of the foregoing, Plaintiffs have been damaged and demand judgment in an amount to be determined at trial.

## AS AND FOR A THIRD CLAIM
### (Breach of Implied Duty of Good Faith by Rockwell against CDII)

86.     Plaintiffs repeat, reiterate, and realleges each and every allegation set forth above with the same force and effect as if set forth at length herein.

16

87.     Every contract, including the Rockwell Convertible Agreement, contains an implied covenant and duty of good faith and fair dealing.

88.     The parties were bound by the terms of the Rockwell Convertible Agreement as well as an implied duty of good faith and fair dealing to protect each party's reasonable expectations.

89.     Rockwell reasonably expected to convert the note into common stock of CDII.

90.     CDII consciously and deliberately interfered with Rockwell's ability to convert the debt into common stock of CDII when it reserved all remaining shares for a third-party and resold the debt to third-parties.

91.     As such, CDII deliberately contravened the intention and spirit of the Rockwell Convertible Agreement.

92.     CDII's actions deprived Rockwell of the benefits of the Rockwell Convertible Agreement.

93.     As a result of the foregoing, Plaintiffs have been damaged and demand judgment in an amount to be determined at trial.

## AS AND FOR A FOURTH CLAIM
### (Abuse of Process against All Defendants)

94.     Plaintiffs repeat, reiterate, and realleges each and every allegation set forth above with the same force and effect as if set forth at length herein.

95.     On information and belief, Defendants initiated the Action without probable cause or legal basis to punish Plaintiffs for failing to agree to provide CDII with a new loan and to cajole or induce Plaintiffs to agree to do so, rather than undertake the expense and inconvenience of defending a suit.

96.     On information and belief, Defendants filed seven motions at the time that the Dismissal Motion was pending to force Plaintiffs to incur extraordinary legal fees and expenses and therefore to pressure Rockwell into loaning additional monies to CDII and Oshana, as an officer of Rockwell, into compelling Rockwell into loaning additional monies to CDII.

97.     As a result of the foregoing, Plaintiffs have been damaged and demand judgment in an amount to be determined at trial.

## AS AND FOR A FIFTH CLAIM
### (Malicious Prosecution against All Defendants)

98.     Plaintiffs repeat, reiterate, and realleges each and every allegation set forth above with the same force and effect as if set forth at length herein.

99.     On information and belief, Defendants initiated the Action with malice because Plaintiffs refused to lend CDII any more money and to conspire with CDII to violate securities law.

100.    On information and belief, the Action included a cause of action for violation of the federal securities law even though Defendants knew there was no private cause of action, because they wanted the accusation of securities law violations against Rockwell to be public.

101.    On information and belief, on July 7, 2016 the Defendants moved to voluntarily withdrew its cause of action for violation of federal securities law because they knew there was no private cause of action.

102.    On information and belief, Defendants filed the Action to besmirch the reputation of Plaintiffs and to hinder the ability of Plaintiffs to enter into new business relationships, by making allegations of improper conduct made in the Action available to the public.

103.    The Action was dismissed against Plaintiffs on April 24, 2017.

104.    Prospective business partners or clients have contacted and inquired of Rockwell and its successor in interest, Northbridge Financial, Inc. ("Northbridge") about the Action during the due diligence process and have expressed concerns about doing business with Rockwell and Northbridge as a result.

105.    On information and belief, Rockwell and its successor in interest, Northbridge have lost deals because of the allegations asserted in the Action, and therefore have lost revenue and the possibility of future transactions due to Defendants' malicious conduct.

106.    As a result of the foregoing, Plaintiffs have been damaged and demands judgement in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs demands judgement against the Defendants as follows:

(a)     Awarding compensatory and consequential damages in an amount to be determined at trial plus prejudgment interest; and an award of punitive damages in an amount to be determined at trial.

(b)     Awarding Plaintiffs its costs and disbursements incurred in the Action including reasonable attorney's fees plus interest.

(c)     Awarding Plaintiffs its costs and disbursements of this action including reasonable attorney's fees and such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38. Plaintiffs herby demand a trial by jury in the above-captioned action on all issues triable by jury.

Dated: New York, New York
      July 31, 17

Respectfully,

WHITE AND WILLIAMS LLP

By:          s/Christopher M. DiMuro
           Christopher M. DiMuro
           DiMuroc@whiteandwilliams.com
           (DC Bar ID: 475865)
The Legal Center
One Riverfront Plaza
1037 Raymond Blvd., Suite 230
Newark, NJ 07102
Telephone: 201-368-7200

           and
           Thomas E. Butler
           butlert@whiteandwilliams.com
           (Pro Hac Admission Application Pending)
           Nicole A. Sullivan
           sullivann@whiteandwilliams.com
           (Pro Hac Admission Application Pending)

7 Times Square, Suite 2900
New York, New York  10036
Telephone:  212-631-4420

*Attorneys for Plaintiffs Rockwell Capital
Partners, Inc. and Samuel Oshana*