# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ROCKWELL CAPITAL PARTNERS, INC., and SAMUEL OSHANA, <br><br> Plaintiffs, <br><br> v. <br><br> CD INTERNATIONAL ENTERPRISES, INC., and HENRY L. KLEIN, <br><br> Defendants. | Case No. 17-cv-1537 (CRC) |

## MEMORANDUM OPINION AND ORDER

In 2016, CD International Enterprises ("CDII") unsuccessfully sued Rockwell Capital Partners over a promissory note. Turning the tables, Rockwell now brings suit against CDII and its attorney—New Orleans sole practitioner Henry L. Klein—for various claims arising from the first lawsuit. CDII and Klein have filed a motion for judgment on the pleadings with respect to two of the claims: abuse of process and malicious prosecution. Because Rockwell fails to adequately plead those claims, the Court will dismiss them and stay the remaining claims, which are brought only against CDII, in light of the company's recent suggestion of bankruptcy.

### I.  Background

This suit stems from another case that this Court dismissed in 2016. To recap the basic facts of that case: CDII is a small, family-run trading company focused on Asian markets. In September 2015, Rockwell agreed to assume some of CDII's debt in exchange for a promissory note that permitted Rockwell to convert the debt into CDII stock at a discounted price. Compl. ¶¶ 22, 25. After Rockwell quickly began to exercise its conversion rights and sell its newly acquired stock at a profit, CDII's share price fell dramatically. Id. ¶¶ 31–36. CDII, represented by Henry Klein, then sued Rockwell, its principal, and two other defendants. CD International

Enterprises, Inc. v. Rockwell Capital Partners, Inc., 16-cv-394. The complaint included claims that the promissory note was void due to lack of consideration and fraud; that the note was unenforceable as against public policy; that Rockwell violated the terms of the note by failing to provide notice to CDII prior to exercising its conversion rights; and that Rockwell wrongfully converted its CDII shares. Rockwell moved to dismiss. While Rockwell's motion was pending, CDII moved for partial summary judgment, moved to voluntarily dismiss a count of its complaint, moved for leave to file a restated opposition to the motion, moved to request an *ex parte* hearing on the restated opposition, and moved for leave to file limited requests for admissions. Id.

The Court granted Rockwell's motion to dismiss on April 24, 2017. While noting that profiting at CDII's expense may well have been Rockwell's goal from the outset, the Court nonetheless concluded that "because Rockwell's actions were consistent with the parties' negotiated, written agreements, no cause of action lies." CD Int'l Enterprises, Inc. v. Rockwell Capital Partners, Inc., 251 F. Supp. 3d 39, 41 (D.D.C. 2017). Following dismissal, CDII filed a notice of appeal, which the D.C. Circuit recently dismissed for failure to prosecute.

Which brings us to the current suit. On July 31, 2017, Rockwell filed a complaint alleging that CDII and Klein knew that their claims in the 2016 lawsuit "were not warranted by applicable law and that its alleged factual contentions were without evidentiary support." Compl. ¶ 1. Rockwell also contends that CDII and Klein filed "frivolous motions" intended to drive up Rockwell's attorneys' fees and force it to loan additional money to CDII. Id. ¶¶ 2–4. Rockwell further alleges that CDII and Klein entered into agreements with other institutional investors both before and after filing the lawsuit that had "essentially the same or worse terms than [CDII] complained of against Rockwell" in the 2016 lawsuit, yet chose not to sue those

investors. Id. ¶¶ 39–68. Finally, in support of its malicious prosecution claim, Rockwell claims that prospective business partners and clients expressed concerns about doing business with Rockwell as a result of the 2016 lawsuit, which led to it losing deals, revenue, and the "possibility of future transactions." Id. ¶¶ 104–05.

The complaint invokes the Court's diversity jurisdiction and includes five claims: tortious interference with contract and prospective economic advantage (against CDII); breach of contract (against CDII); breach of implied duty of good faith (against CDII); abuse of process (against CDII and Klein); and malicious prosecution (against CDII and Klein). Following a hearing on November 17, 2017, CDII and Klein filed a motion for judgment on the pleadings on Rockwell's abuse of process and malicious prosecution claims. And on February 7, 2018, CDII filed a "suggestion of bankruptcy," thus triggering the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362. By operation of the automatic stay, none of Rockwell's remaining claims may proceed against CDII.[1]

## II. Standard of Review

In resolving a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), a court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Peters v. National R.R. Passenger Corp., 966 F.2d 1483, 1485 (D.C. Cir. 1992). A court "will grant a motion for judgment on the pleadings only if, after the close of the pleadings, no material fact remains in

---

[1] Because the Court finds that Rockwell did not sufficiently allege its abuse of process and malicious prosecution claims, it will dismiss them against both Mr. Klein and CDII. See, e.g., Dennis v. A.H. Robins Co., 860 F.2d 871, 872 (8th Cir. 1988) (holding that a district court has the power to dismiss claims notwithstanding a bankruptcy stay).

dispute, and the moving party is entitled to judgment as a matter of law." Transworld Prods. Co. v. Canteen Corp., 908 F. Supp. 1 (D.D.C. 1995).

### III. Analysis

#### A. Abuse of Process

The crux of Rockwell's abuse of process claim is that CDII and Klein filed the 2016 lawsuit and subsequent "baseless motions" in order to force Rockwell to incur "extraordinary" legal expenses and ultimately "extort Rockwell into providing additional funds to CDII." Opp'n at 7–8. As an indication of this supposed motive, Rockwell alleges that CDII and Klein chose not to sue other investors over "virtually identical" agreements because those investors, unlike Rockwell, were willing to continue funding CDII. Id. at 8.

Courts in this jurisdiction have tended to take a restrictive view of abuse of process claims given their potential to limit "unfettered access to the courts" and to cause a "chilling and inhibitory effect on would-be litigants of justiciable issues." Bannum, Inc. v. Citizens for a Safe Ward Five, Inc., 383 F. Supp. 2d 32, 46 n.10 (D.D.C. 2005). To prevail on a claim for abuse of process under D.C. law, the moving party must demonstrate a "perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge." Morowitz v. Marvel, 423 A.2d 196, 198 (D.C. 1980). An ulterior motive for using the judicial system is not alone a sufficient basis for an abuse of process claim. See, e.g., Houlahan v. World Wide Ass'n of Specialty Programs and Schools, 677 F. Supp. 2d 195, 200 (D.C. 2010). Rather, Rockwell must allege that CDII and Klein misused the judicial process to seek relief beyond what "the system legitimately offered." Bannum, 383 F. Supp. 2d at 46. Stated differently, they must allege, in addition to an ulterior motive, "[s]ome act or threat directed to an immediate objective not legitimate in the use of process." Restatement (Second) of Torts § 682 (1977).

4

Such acts usually involve "some form of extortion . . . ." Scott v. District of Columbia, 101 F.3d 748, 755 (D.C. Cir. 1996) (adopting Restatement's formulation of abuse of process).

Rockwell fails to adequately plead this second element of an abuse of process claim. The only affirmative acts that Rockwell alleges Klein and CDII took are initiating the suit in the first place and then filing "baseless" motions whose aim was to drive up Rockwell's litigation costs. That is not enough. The filing of the lawsuit is insufficient because under D.C. law "mere issuance of [] process is not actionable, no matter what ulterior motive may have prompted it; the gist of the action like in the improper use *after* issuance." Morowitz, 423 A.2d at 198 (internal citation omitted) (emphasis added). And while filing vexatious pleadings could in some circumstances support an abuse of process claim, Rockwell alleges nothing to suggest that the motions CDII filed were anything but good faith (though mostly unsuccessful) efforts to obtain relief to which CDII believed it was entitled when it filed the motion.[2] Absent any other alleged threat or extortionate conduct by Klein or CDII, the filing of a few misguided motions does not plausibly amount to a perversion of the legal process to achieve a collateral purpose. Any other result would turn the litigation of many routine civil suits into grounds for abuse of process claims.

Rockwell's abuse of process claim also fails for a different reason. Under D.C. law, a plaintiff "must demonstrate not only ulterior motive, but success in achieving illegitimate ends with resulting injury." Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union,

---

[2] Indeed, one of the motions about which Rockwell complains sought to voluntarily dismiss one of CDII's claims. Case No. 16-cv-394, March 7, 2016 Notice of Voluntary Dismissal (ECF No. 8). And another—to file a restated opposition brief—was granted by the Court. Case No. 16-cv-394, April 24, 2017 Minute Order. In any case, the Court views Federal Rule of Civil Procedure 11 as the proper vehicle for sanctioning frivolous filings intrinsic to a lawsuit; not retaliatory abuse of process actions.

883 F.2d 132, 137–38 (D.C. Cir. 1989). So even if CDII and Klein filed the lawsuit in order to obtain additional financing, Rockwell suffered "no actionable injury" because CDII did not "accomplish this impermissible purpose." Id. at 138.[3] And high attorneys' fees and expenses, the only "end" Rockwell alleges CDII and Klein achieved through the lawsuit, do not suffice: "such results are the unhappy incident of almost any litigation and are an insufficient basis for an abuse of process claim." Bannum, 383 F. Supp. at 47. Finally, CDII and Klein's decision to sue Rockwell rather than other third parties does not support an abuse of process claim. Choosing Rockwell as the sole target of its lawsuit may speak to CDII's motivation for filing the suit. But it does not alone suggest that CDII sought to obtain some extra-legal end, as is required to show an abuse of process claim. The Court will, accordingly, dismiss Rockwell's abuse of process claim.

---

[3] In Whelan v. Abell, the D.C. Circuit found that the abuse of process claim under D.C. law does not require that the defendant "fully achieve[] his ulterior goal." 953 F.2d 663, 670 (D.C. Cir. 1992). To the extent this statement of the law is contrary to Yellow Bus Lines' requirement that the improper purpose be achieved, the Court is bound to follow Yellow Bus Lines because it was decided first. See Sierra Club v. Jackson, 648 F.3d 848, 854 (D.C. Cir. 2011) ("[W]hen a decision of one panel is inconsistent with the decision of a prior panel, the norm is that the later decision, being in violation of that fixed law, cannot prevail.").

To the extent that Whelan and Yellow Bus Lines are distinguishable on their facts, the Court finds the facts of this case to be more akin to those of Yellow Bus Lines. Whelan involved a lawsuit that the district court judge described as "nothing more than a desperate attempt by disappointed investors to create a cause of action where none exists." 953 F.2d at 667. It also involved explicit threats of legal action if a company did not agree to take certain financial actions, and ultimately resulted in the bankruptcy of the company after major investors withdrew their support as a result of the lawsuit. Id. at 666–67. The Whelan panel distinguished those facts from Yellow Bus Lines, where the plaintiff did not suffer a "significant injury" because the threatening party dropped its extra-legal demands and the case ultimately settled for $3,000. Id. at 671. So while Rockwell may allege an improper, collateral motive for CDII's suit—forcing Rockwell to loan it additional money—there is no allegation that Rockwell experienced significant injury that was related to that collateral goal (as opposed to monetary and reputational costs inherent in any lawsuit).

6

B. <u>Malicious Prosecution</u>

Moving to Rockwell's malicious prosecution claim, the company contends that CDII and Klein acted with "malice" and without probable cause in bringing suit against Rockwell knowing that their "factual and legal allegations were unsupported." Opp'n at 12. Rockwell argues that it "suffered special injury in the form of lost business and harm to its reputation" as a result of the 2016 suit. <u>Id.</u> at 13.

To establish a claim of malicious prosecution in the District of Columbia, a plaintiff must plead: "(1) that the underlying suit terminated in plaintiff's favor; (2) malice on the part of the defendant; (3) lack of probable cause for the underlying suit; and (4) special injury occasioned by the plaintiff as a result of the original action." <u>Morowitz</u>, 423 A.2d at 198. "'Special injury' is defined as an arrest, a seizure of property, or an injury which would not necessarily result from suits to recover for like causes of action." <u>Havilah Real Property Services, LLC v. VLK, LLC</u>, 108 A.3d 334, 354 (D.C. 2015). D.C. courts have "repeatedly held" that "injuries to reputation, emotional distress, loss of income, and substantial expense in defending are outside the scope of what constitutes a 'special injury.'" <u>Id.</u> <u>See also</u> <u>Mazanderan v. McGranery</u>, 490 A.2d 180, 182 (D.C. 1984); <u>Epps v. Vogel</u>, 454 A.2d 320, 324 (D.C. 1982).

Rockwell's sole asserted "special injury" is "lost business and harm to its reputation." Opp'n at 13; 2017 Compl. ¶¶ 104–05. But because injury to reputation and loss of income do not constitute a "special injury," Rockwell's complaint fails to state a claim for malicious prosecution.

**IV. Conclusion**

For the foregoing reasons, it is hereby

**ORDERED** that [15] Defendants' Motion for Judgment on the Pleadings is GRANTED. It is further

**ORDERED** that the remaining claims are stayed pursuant to 11 U.S.C. § 362.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date: April 27, 2018